**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 25-00145-ELG |
| SHILLINGS' CANNERY, L.L.C., | ) | Chapter 11, Subchapter V |
| | ) | |
| Debtor and Debtor-In-Possession. | ) | |
| | ) | |

**DEBTOR'S CHAPTER 11 PLAN OF**
**REORGANIZATION DATED JULY 21, 2025**

Pursuant to Section 1189 of Title 11 of the United States Code, Shillings' Cannery, L.L.C. ("Shillings", or the "Debtor"), by and through its attorneys, Justin P. Fasano, and McNamee Hosea, P.A., files this *Debtor's Chapter 11 Plan of Reorganization dated July 21, 2025* (the "Plan"), and in support thereof, states as follows:

Debtor is the proponent of the Plan within the meaning of Bankruptcy Code section 1129. Reference is made to the disclosures below for a discussion of (i) the Debtor's history, assets, and liabilities, (ii) a summary and analysis of this Plan, and (iii) certain related matters, including risk factors relating to the consummation of this Plan. No solicitation materials have been approved for use in soliciting acceptances and rejections of the Plan. Subject to certain restrictions and requirements set forth in Bankruptcy Code sections 1127 and 1193 and Bankruptcy Rule 3019, the Debtor reserves the right to alter, amend, modify, revoke, or withdraw this Plan prior to its substantial consummation.

**ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ CAREFULLY THE PLAN AND THE DISCLOSURES HEREIN BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.**

###### i.        BACKGROUND FOR CASES FILED UNDER SUBCHAPTER V

**A. <u>Description and History of the Debtor's Bankruptcy, Businesses and Finances.</u>**

The Debtor commenced this case under Chapter 11, Subchapter V, with the filing of a voluntary petition on April 22, 2025.  No creditors' committee has been appointed in this case.  Jolene Wee has been appointed as Subchapter V trustee.

###### i.        <u>Background:</u> The Debtor is a District of Columbia limited liability company

which operates a restaurant and bar located at 360 Water Street, SE, Washington D.C. 20003 d/b/a "Shilling Canning Company."  During the day, it operates a pop-up sandwich store called Ampersandwich.   It is majority owned and operated by Reid Shilling, who named it after a family business in Finksburg, Maryland which operated from 1935 to 1958.  Mr. Shilling invested over $700,000n in the buildout of the restaurant. The restaurant opened in July 2019, eight months before the COVID-19 pandemic.  It survived by taking out a $500,000 Economic Injury Disaster loan, paying abated rent, and cutting expenses to bare bones.  Still, even as the pandemic eased, the restaurant has struggled, as workers in the District of Columbia had switched to remote work.  The recent return of federal workers, and many private workers, to the office, has buoyed the Debtor's sales and provides a strong foundation on which to base the Debtor's reorganization.

###### ii.        <u>Secured Claims:</u>

A.        **Assets:**  The Debtor's primary assets consist of cash, equipment and inventory, the value of which is estimated below.

> **Cash/ Accounts Receivable:** The Debtor estimates that it will have cash of $90,000.00 as of confirmation. It has no accounts receivable.  Such cash is subject to the lien of the SBA.

2

**Equipment:** The Debtor owns the following equipment and inventory as set forth in its schedules, which it values at approximately $130,000.00 on a going concern basis. Such equipment and inventory is subject to the lien of SBA

**Avoidance Actions:** The Debtor does not believe it has any significant viable Avoidance Actions.

iii.    **Secured Claims**: A review of the records of the District of Columbia Recorder of Deeds indicates only one creditors who could assert a secured claim: The SBA, which asserts an interest in substantially all of assets of the Debtor.

iv.    **Administrative Claims:** The Debtor believes, that, as of the Effective Date, it will have approximately $15,000 in administrative professional claims, over and above any retainer provided, including claims owed to McNamee Hosea, and to the Trustee.

v.    **Priority Unsecured Claims:** The Debtor owes sale tax totaling $76,104.19, which is all pre-bankruptcy.

vi.    **Landlord Arrearages:** The Debtor's landlord, FC 1331, LLC, asserts pre-petition arrearages of $278,297.00. The Debtor asserts these arrearages are actually $148,649.45. The difference in assertions is based on whether abated rent which would have came due during the COVID-19 pandemic is now due based on the Debtor's later default on rent payment under the lease after the rent abatement period ended. The Debtor asserts that only a non-monetary default would reinstate the obligation to pay such abated rent. The landlord asserts the opposite.

vii.    **Other Unsecured Claims:** The Debtor believes, that, it will have approximately $389,000.00 in general unsecured claims, as set forth on **Exhibit A**, including the $345,000 bifurcated undersecured claim of the Small Business Administration.

3

**Liquidation Analysis** To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation.  As the Debtor's assets are all encumbered by the lien of the SBA, creditors in Chapter 7 would receive no distribution.  Accordingly, the Chapter 7 liquidation analysis is satisfied.

> **B.**     **Ability to make future plan payments and operate without further reorganization**

The Debtor must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the Debtor's business.  The Debtor has provided total projected financial information as **Exhibit B.**  The Debtor's projections show that the Debtor will have projected disposable income (as defined by § 1191(d) of the Bankruptcy Code) for the period described in § 1191(c)(2), of $10,000 per year.  The final Plan payment to unsecured creditors is expected to be paid on the date that is approximately five years after the Effective Date of the Plan.  You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.

> **C.**     **Estimated Administrative Expenses:**  McNamee Hosea is holding $18,042.00 in retainer.  In the event of a relatively uncontested confirmation hearing, the Debtor anticipates $10,000 in debtor's attorneys' fees above said retainer, plus up to $5,000 owed to the Trustee.  In the event of a heavily contested confirmation hearing, the Debtor anticipates up to $20,000.00 in debtor's attorneys' fees above retainer, plus up to $10,000 owed to the Trustee.

> **ii.**     **DEFINITIONS**

The following terms (which appear in this Plan as capitalized terms), when used in this Plan, have the meanings set forth below:

**"Administrative Expense Claim"** means a claim for administrative costs or expenses that are allowable under Bankruptcy Code section 503(b). These costs or expenses may include: (a) actual, necessary costs and expenses of preserving the Debtor's Estate after the Petition Date but prior to the Effective Date; (b) Professional Fee Claims; and (c) Administrative Tax Claims.

**"Administrative Expense Claims Bar Date"** means thirty (30) days after the Effective Date, with respect to Administrative Expense Claims (except for Professional Fee Claims) for services rendered or expenses incurred from the Petition Date through the Effective Date relating to or arising out of any period after the Petition Date.

**"Administrative Tax Claim"** means a Claim that is not an Allowed Secured Claim and that a government unit asserts against the Debtor either for taxes or for related interest or penalties for any tax period that, in whole or in part, falls within the period beginning on the date of the Petition Date and ending on the Effective Date.

**"Allowed Administrative Expense Claim"** means an Administrative Expense Claim that is allowed as set forth in Section 3.02.

**"Allowed Claim"** means a Claim, other than an Administrative Expense Claim, (i) allowed by Final Order of the Bankruptcy Court, (ii) proof of which was timely filed on or before the Claims Bar Date or (iii) if no proof of Claim has been timely filed, which has been or hereafter is listed in the Bankruptcy Schedules as liquidated in amount and not disputed or contingent, and in each such case in clauses (ii) and (iii) above, a Claim as to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or a Final Order. Unless otherwise specified in the Plan, an Allowed Claim does not include interest on the Claim accruing after the Petition Date. Moreover, any Claim or portion of a Claim that was or is satisfied, forgiven, or released during the Case is not an Allowed Claim. For purposes of determining the amount of an Allowed Claim, there shall be deducted therefrom an amount equal to the amount of any Claim which the Debtor may hold against the Holder thereof, to the extent that such Claim may be set off pursuant to applicable law.

**"Allowed Class '**'\*\*' Claim"** means an Allowed Claim in the particular class described.

**"Assets"** means all assets of the Debtor's Estate including, but not limited to, "property of the estate" as described in section 541 and 1186 of the Bankruptcy Code.

**"Avoidance Action"** means any Causes of Action arising under Bankruptcy Code sections 542, 543, 544, 547, 548, 549, 550, 551, 552, and 553 or under related state or federal statutes and common law, including without limitation all fraudulent conveyance laws, fraudulent transfer laws, and all non-bankruptcy laws vesting in Creditors any and all rights to avoid, rescind, or recover on account of transfers, whether or not litigation is commenced to prosecute such Cause of Action.

**"Ballot"** means the Ballot for accepting or rejecting the Plan.

**"Ballot Date"** means the date set by the Bankruptcy Court by which all Ballots with respect to the Plan must be received.

**"Bankruptcy Code"** means title 11 of the United States Code, as now in effect or hereafter amended and as applicable to the Case.

**"Bankruptcy Court"** or **"Court"** means the United States Bankruptcy Court for the District of Columbia.

**"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure.

**"Bankruptcy Schedules"** means the Schedules of Assets and Liabilities and Statement of Financial Affairs filed by the Debtor, as the same may have been amended from time to time.

**"Business Day"** means any day other than a Saturday, Sunday or a legal holiday (as defined in Bankruptcy Rule 9006(a)).

**"Case"** means the above-captioned case commenced by the Debtor in the Bankruptcy Court.

**"Cash"** means cash or cash equivalents including, but not limited to, bank deposits, checks or other similar items.

**"Causes of Action"** means any and all claims, demands, rights, actions, causes of action and suits of the Debtor and the Estate, of any kind or character whatsoever, known or unknown, suspected or unsuspected, matured or unmatured, whether arising prior to, on or after the Petition Date, in contract or in tort, at law or in equity or under any other theory of law, whether or not previously reduced to judgment by the Debtor, including but not limited to (1) rights of setoff, counterclaim or recoupment, and claims on contracts or for breaches of duties imposed by law; (2) the right to object to claims or interests; (3) claims pursuant to section 362 of the Bankruptcy Code; (4) such claims and defenses as fraud, negligence, breach of fiduciary duty, corporate waste, unlawful dividends, mistake, duress and usury; (5) all Avoidance Actions; (6) claims for tax refunds; (7) claims pursuant to section 510 of the Bankruptcy Code, and (8) Section 506(c) Claims; and (9) any other claims which may be asserted against third parties.

**"Claim"** means a claim as that term is defined in Bankruptcy Code section 101(5).

**"Claims Bar Date"** means, with respect to Claims filed by Creditors other than Governmental Agencies, July 1, 2025, which is the last date for Creditors other than Governmental Agencies to file claims pursuant to the Notice of Chapter 11 Bankruptcy Case [Docket No. 11] and with respect to Claims filed by the Debtor on behalf of Creditors, July 31, 2025, which is the last date for the Debtor to file Claims on behalf of Creditors against the Estate pursuant to Federal Rule of Bankruptcy Procedure 3004, and with respect to Claims filed by Governmental Agencies, October 20, 2025, the last date for Governmental Agencies to file Claims pursuant to Notice of Chapter 11 Bankruptcy Case [Docket No. 11], and with respect to Claims filed by the Debtor on behalf of Governmental Agencies, November 19, 2025, which was the last date for the Debtor to file Claims on behalf of Governmental Agencies against the Estate pursuant to Federal Rule of Bankruptcy Procedure 3004. **Notwithstanding the foregoing, the deadline for creditors to amend claims filed pursuant to 11 U.S.C. 501 or deemed filed pursuant to 11 U.S.C. § 1111(a) shall be 30 days after the Effective Date.** Notwithstanding the foregoing, for any creditor who did not receive notice of the bankruptcy in a manner that their claim

would be deemed non-dischargeable under 11 U.S.C. § 523(a)(3), the Claims Bar Date will be deemed extended for 30 days after such creditor receives such notice.

**"Claims Objection Deadline"** means the last day for filing objections to General Unsecured Claims, which day shall be the later of (a) one hundred and eighty days (180) days after the Effective Date or (b) such other date as the Bankruptcy Court may order. The Debtor may obtain a one time automatic extension of the Claims Objection Deadline by filing a notice of extension of the Claims Objection Deadline, which shall automatically extend the Claims Objection Deadline until the date specified in such notice up to an additional one hundred and eighty days (180) days after the current Claims Objection Deadline. Thereafter, any further extension of the Claims Objection Deadline shall require bankruptcy court approval, and may be granted only upon a showing of exigent circumstances. In the event that such a motion to further extend the Claims Objection Deadline is denied, the Claims Objection Deadline shall be the later of the current Claims Objection Deadline (as previously extended, if applicable) or sixty (60) days after the Bankruptcy Court's entry of an order denying the motion to further extend the Claims Objection Deadline.

**"Class"** means a group of Claims as classified in Article III.

"**Confirmation**" means the entry of an Order by the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

**"Confirmation Date"** means the date on which the Bankruptcy Court enters the Confirmation Order on its docket.

**"Confirmation Hearing"** means the hearing regarding Plan Confirmation.

**"Confirmation Order"** means the order of the Bankruptcy Court confirming this Plan under Bankruptcy Code section 1129.

**"Creditor"** has the meaning set forth in Section 101(10) of the Bankruptcy Code.

**"Debtor"** means Shillings' Cannery, L.L.C.

**"Disputed Claim"** means a Claim:

(a) As to which a proof of claim is filed or is deemed filed under Bankruptcy Rule 3003(b)(1) or a proof of interest is filed or is deemed filed under Bankruptcy Rule 3003(b)(2); and

(b) As to which an objection: (1) has been timely filed; and (2) has neither been overruled nor been denied by a Final Order and has not been withdrawn.

**"Disputed Claim Amount"** means (a) if the liquidated amount is set forth in the proof of claim relating to a Disputed Claim, (i) the liquidated amount set forth in the proof of claim relating to the Disputed Claim as may have been modified by Final Order of the Bankruptcy Court; (ii) the disputed amount as agreed to by the Debtor and the Holder of such Disputed Claim; or (iii) if a request for

estimation is filed by any party, the amount estimated as disputed by the Bankruptcy Court; (b) if no liquidated amount is set forth in the Proof of Claim relating to a Disputed Claim, (i) the disputed amount agreed to by the Debtor and the Holder of such Disputed Claim or (ii) zero; or (c) if the Claim was listed on the Bankruptcy Schedules as unliquidated, contingent or disputed and no proof of claim was filed, or deemed to have been filed, by the applicable Claims Bar Date and the Claim has not been resolved by written agreement of the parties or an order of the Bankruptcy Court, zero.

**"Distribution"** means any transfer under the Plan of Cash or other property or instruments to either a Holder of an Allowed Administrative Expense Claim or a Holder of an Allowed Claim.

**"Effective Date"** has the meaning set forth in Section 8.02

**"Entity"** has the meaning set forth in Section 101(15) of the Bankruptcy Code.

**"Estate"** means the bankruptcy estate of the Debtor.

"**Estate Parties**" means the Persons referenced in Section 9.01.

**"Executory Contracts"** means those agreements or obligations which are not fully performed by the Debtor and are subject to assumption or rejection pursuant to §365 of the Bankruptcy Code.

**"Final Fee Application"** means the final requests or applications for payment of Professional Fee Claims.

**"Final Order"** means an order or judgment of a court of competent jurisdiction entered on such court's official docket:

(a) That has not been reversed, rescinded, stayed, modified, or amended;
(b) That is in full force and effect; and
(c) With respect to which: (1) the time to appeal or to seek review, remand, rehearing, or a *writ of certiorari* has expired and as to which no timely filed appeal or petition for review, rehearing, remand, or *writ of certiorari* is pending; or (2) any such appeal or petition has been dismissed or resolved by the highest court to which the order or judgment was appealed or from which review, rehearing, remand, or a *writ of certiorari* was sought.

**"General Unsecured Claim"** means a Claim that is not an Administrative Expense Claim, a Priority Tax Claim, a Non-Tax Priority Claim, or a Secured Claim.

**"Governmental Agency(y)(ies)"** means any department or agency of the United States of America or any state, including quasi-governmental agencies, acting through, or funded by any such department or agency, through state or federal government charter, or otherwise.

**"Holder"** means the holder of a Claim.

**"Local Rules"** means the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Columbia, as now in effect or hereafter amended and applicable to the Case.

**"Non-Dischargeable Claim"** means any claim which is held to be non-dischargeable pursuant to 11 U.S.C. § 1192(2).

**"Non-Tax Priority Claim"** means a Claim, other than and without duplication of an Administrative Expense Claim or Priority Tax Claim, which is entitled to priority in payment pursuant to Bankruptcy Code section 507(a)(3), (4), (5), (6), (7), (9) or (10).

**"Person"** means any natural person or Entity.

**"Petition Date"** means April 22, 2025.

**"Plan"** means this Debtor's Chapter 11 Plan of Reorganization dated July 21, 2025, as it may be amended or supplemented.

**"Plan Document"** means this Plan, and any Exhibits thereto.

**"Post-Effective Date Expenses"** means any expenses incurred by the Debtor after the Effective Date including, but not limited to, professional fees and expenses incurred by the Debtor and expenses incurred by the Debtor in the ordinary course of business.

**"Post-Petition"** means the time after the Petition Date.

**"Priority Tax Claim"** means a Claim entitled to priority against the Debtor under Bankruptcy Code section 507(a)(8), or which is secured by the Assets of the Debtor.

**"Professional Fee Claim"** means a Claim under Bankruptcy Code sections 326, 327, 328, 330, 331, 503(b), or 1103 for compensation for services rendered by any of the Professionals, or related expenses, incurred after the Petition Date but prior to the Effective Date on behalf of the Estate; or

**"Professionals"** means the professionals (attorneys, accountants, appraisers, financial advisors, and the like) employed by the Estate with the approval of the Bankruptcy Court at the expense of the Estate pursuant to sections 327 and/or 328 of the Bankruptcy Code, and shall also include the Trustee.

**"Rejection Damage Claim"** means a Claim for damages arising under an unexpired lease of real or personal property or an executory contract that the Debtor rejects under Bankruptcy Code section 365 or pursuant to the terms of this Plan.

**"SBA"** means the United States Small Business Administration.

**"Section 506(c) Claim"** means any surcharge claim asserted by the Debtor after the Effective Date pursuant to Section 506(c) of the Bankruptcy Code.

"**Secured Claim**" means a Claim that is secured by a valid and unavoidable lien against property in which an Estate has an interest or that is subject to setoff under Bankruptcy Code section 553. A Claim is a Secured Claim only to the extent of the value of the claimholder's interest in the collateral securing the Claim or to the extent of the amount subject to setoff, whichever is applicable, and as determined under Bankruptcy Code section 506(a).

"**Trustee**" means Jolene Wee, or any successor SubChapter V trustee who may be appointed pursuant to 11 U.S.C. § 1183.

"**Unclaimed Property**" means any Cash or other property which is unclaimed for sixty (60) days after its distribution.

"**U.S. Trustee**" means the Office of the United States Trustee.

## ARTICLE I – SUMMARY OF PLAN AND CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

The Plan divides Creditors and Interest Holders into Classes based on their legal rights and interests and provides for the satisfaction and/or reinstatement of Claims based upon such classification. This Article classifies Claims, except for Administrative Expense Claims and Priority Tax Claims, which are not classified, for all purposes, including voting, confirmation, and Distribution under the Plan. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest falls within the Class description. To the extent that part of the Claim or Interest falls within a different Class description, the Claim or Interest is classified in that different Class. The following table summarizes the Classes of Claims and Interests under this Plan.

| CLASS | DESCRIPTION | IMPAIRED/ UNIMPAIRED | VOTING STATUS |
|-------|-------------|----------------------|---------------|
| Class 1 | Unspecified Non-Tax Priority Claims | Unimpaired | Deemed to Accept; Not Entitled to Vote on the Plan |
| Class 2 | Cure Claim of FC 1331, LLC | Impaired | Impaired, Entitled to Vote on the Plan |
| Class 3 | Secured Claim of SBA | Impaired | Impaired, Entitled to Vote on the Plan |
| Class 4 | General Unsecured Claims | Impaired | Impaired, Entitled to Vote on the Plan |
| Class 5 | Interests | Unimpaired | Deemed to Accept; Not Entitled to Vote on the Plan |

The treatment in this Plan is in full and complete satisfaction of all of the legal, contractual, and equitable rights that each Holder of an Allowed Claim or Interest may have in or against the Debtor, the Estate or the Debtor's property.  This treatment supersedes and replaces any agreements or rights those Holders have in or against the Debtor, the Estate or property of the Debtor or the Estate.   All Distributions under the Plan will be tendered to the Person holding the Allowed Claim. **EXCEPT AS SPECIFICALLY SET FORTH IN THIS PLAN, NO DISTRIBUTIONS WILL BE MADE AND NO RIGHTS WILL BE RETAINED ON ACCOUNT OF ANY CLAIM THAT IS NOT AN ALLOWED CLAIM.**

### ARTICLE III: TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, PRIORITY TAX CLAIMS, AND QUARTERLY AND COURT FEES

**3.01** **Allowance of Unclassified Claims (Administrative Expense Claims and Priority Tax Claims):**  Persons that hold Administrative Expense Claims and that do not timely file and serve a motion or application seeking payment in accordance with this Article and the Bankruptcy Code will be **FOREVER BARRED** from asserting those Administrative Expense Claims.

**3.02 Allowed Administrative Expense Claims Other than Professional Fee Claims:**  An Administrative Expense Claim that is not a Professional Fee Claim will be allowed only if: on or before the Administrative Expense Claim Bar Date, the Person holding the Claim both filed with the Bankruptcy Court a motion or application requesting that the estate pay the Claim and served the motion or application on the Debtor, and the Trustee.  Provided, however, that the Debtor may elect to deem an Administrative Expense Claim (other than a Professional Fee Claim) incurred in the ordinary course of the Debtor's affairs to be treated as an Allowed Administrative Expense Claim in accordance with the terms and conditions of the particular transaction that gave rise to the Claim without requiring the Person holding such Administrative Expense Claim to file a request for payment.  In the event that an objection is timely filed to an Administrative Expense Claim, the Bankruptcy Court shall determine the allowed amount of such Administrative Expense Claim.

**3.03 Allowed Professional Fee Claims:**  Final Fee Applications must be filed no later than twenty-one (21) days after the Effective Date. Final Fee Applications will be noticed in accordance with the Bankruptcy Rules and Local Rules.  Objections, if any, shall be filed in accordance with the Bankruptcy Rules and Local Rules and served on the Professional whose Final Fee Application is being objected to, the Debtor, the Trustee, and the Office of the U.S. Trustee.

**3.04 Allowed Priority Tax Claims (Including Secured Tax Claims):** The Claim of any Person holding a Priority Tax Claim will be allowed only if such Person filed a Claim prior to the Claims Bar Date and no objection to the Priority Tax Claim is filed by the Claims Objection Deadline.  In the event that an objection is timely filed to a Priority Tax Claim, the Bankruptcy Court shall determine the allowed amount of such Priority Tax Claim.  In the event that no objection is timely filed to an otherwise properly filed Priority Tax Claim, such Priority Tax Claim shall be deemed allowed in the amount requested.

**3.05    Treatment of Unclassified Claims (Administrative Expense Claims and Priority Tax Claims)**

**3.05.1  Post-Petition Administrative Expense Claims (including Professional Fee Claims):**    Except to the extent that a holder of a Post-Petition Allowed Administrative Expense Claim agrees to a different treatment, each holder of a Post-Petition Allowed Administrative Expense Claim shall receive from the Debtor, in full and complete settlement, satisfaction and discharge of its Post-Petition Allowed Administrative Expense Claim, on the later to occur of (i) the Effective Date (or as soon as reasonably practicable thereafter) and (ii) the date on which such Claim shall become an Allowed Claim, Cash equal to the unpaid portion of such Post-Petition Allowed Expense Administrative Claim; provided, however, that Post-Petition Allowed Administrative Expense Claims with respect to liabilities incurred by the Debtor in the ordinary course of their affairs during the Case may be paid in the ordinary course of affairs in accordance with the terms and conditions of any agreements relating thereto by the Debtor.  Holders of Post-Petition Administrative Claims will be paid in full on account of their Claims and are not entitled to vote on this Plan.

**3.05.2  Priority Tax Claims:** Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a different treatment, at the sole option of the Debtor, each holder of an Allowed Priority Tax Claim shall receive from the Debtor, in full and complete settlement, satisfaction and discharge of its Allowed Priority Tax Claim: (a) Cash in an amount equal to such Allowed Priority Tax Claim on, or as soon thereafter as is reasonably practicable, the later of the Effective Date and the first Business Day after the date that is thirty (30) calendar days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, or (b) equal quarterly Cash payments in an aggregate amount equal to such Allowed Priority Tax Claim, over a period not to end later than five (5) years after the Petition Date, which shall begin on, or as soon thereafter as is reasonably practicable, the later of the Effective Date and the first Business Day after the date that is thirty (30) calendar days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim.  Holders of Priority Tax Claims will be paid in full on account of such Claims and are not entitled to vote on this Plan.

**ARTICLE 4   - Classified Claims**

**4.01 Classification and Treatment of Non Tax Priority Claims (Class 1)**

| | |
|---|---|
| <u>**Classification:**</u> | Class 1 consists of all Non-Tax Priority Claims. |
| <u>**Treatment:**</u> | Provided that a Non-Tax Priority Claim has not been paid prior to the Effective Date, and except to the extent that a holder of a Non-Tax Priority Claim agrees to a different treatment, each holder of an Allowed Non-Tax Priority Claim shall receive from the Debtor, in full and complete settlement, satisfaction and discharge of its Allowed Non-Tax Priority Claim, on the Effective Date, Cash equal to the unpaid portion of such Allowed Non-Tax Priority Claim.  Class 1 is unimpaired under |

this Plan and is conclusively presumed to have accepted this Plan and, therefore, Holders of Class 1 Claims are not entitled to vote to accept or reject this Plan.

The Debtor does not believe any Non-Tax Priority Claims exist and that therefore, this class will be deemed eliminated from the Plan.

### 4.02 Cure Claim of FC 1331, LLC (Class 2)

**Classification:**     Class 2 consists of the secured claim of FC 1331, LLC.

**Treatment:**     FC 1331, LLC shall have an allowed administrative claim for the amount required to cure its pre-petition arrearages $148,649.45.  Along with all post-confirmation lease payments, pursuant to 11 U.S.C. § 1191(e), the Debtor shall pay monthly payments of $2,737.61 of principal and 4% interest, to FC 1331, LLC, with a balloon payment due at the end of the lease, if said lease is not extended, pursuant to the amortization schedule attached as **Exhibit C**.  The Debtor may, in its discretion, prepay all amounts owed to FC 1331, LLC without penalty.

Class 2 claims will be discharged upon confirmation if this Plan is confirmed pursuant to 11 U.S.C. § 1191(a) and upon completion of the Plan if this Plan is confirmed pursuant to 11 U.S.C. § 1191(b).

### 4.03 Cure Claim of Small Business Administration (Class 3)

**Classification:**     Class 3 consists of the secured claim of the SBA

**Treatment:**     The SBA shall have an allowed secured claim for $225,000.00.  The Debtor shall pay monthly payments of $1,042.01 of principal and 3.75% interest, to the SBA for 30 years on its allowed secured claim pursuant to the amortization schedule attached as **Exhibit D**.  The Debtor may, in its discretion, prepay all amounts owed to Rapid Finance without penalty.  If the Court determines that SBA's secured claim is higher than $225,000, the interest rate and payment term set forth above shall remain the same, and the monthly payment shall increase proportionally based on the higher secured claim, and the Biannual Payments paid to Class 4 Claimants shall decrease by the additional amount that is required to be paid to the SBA per six month period.  If the Debtor's lease with FC 1331, LLC is not extended by the end of the Plan, the Debtor shall make a balloon payment on the date of the expiration of the Debtor's lease with FC 1331, LLC to the SBA of all remaining amounts due.

**4.04  Classification and Treatment of Unsecured Claims (Class 4)**

| | |
|---|---|
| **Classification:** | Class 4 consists of all General Unsecured Claims, including those claims listed on Exhibit A. |
| **Treatment:** | Provided that an Allowed Class 4 Claim has not been paid prior to the Effective Date, and except to the extent that a holder of a Class 4 Claim agrees to a different and lesser treatment, each holder of an Allowed Class 4 Claim shall receive from the Debtor, in full and complete settlement, satisfaction and discharge of its Allowed Class 3 Claim, a pro rata portion of the Biannual Payments (each such pro rata share to be paid after Allowed Administrative Claims are satisfied, and payment of the commission incurred by the Trustee, if any).  To the extent any Class 4 Claim is deemed to be a Non-Dischargeable Claim, it will be paid in full, with interest at the federal judgment rate in effect on the Confirmation Date, in equal Biannual Payments, over a period not to exceed ten years, beginning on the first day of the quarter immediately after the last Quarterly Payment is made.  Any creditor asserting a Non-Dischargeable Claim will be required to have filed an adversary proceeding by not later than the Confirmation Date, or have forever waived their right to do so. |

If the Court determines that any of the Priority Tax Claimants or Class 2 or 3 Claimants require higher payments for any reason, the monthly payment to said Claimants shall increase, and the Biannual Payments paid to Class 3 Claimants shall decrease by the additional amount that is required to be paid to the Priority Tax Claimants or Class 2 or 3 Claimants per six month period.

Class 4 is impaired under this Plan and, therefore, Holders of Class 4 Claims are entitled to vote to accept or reject this Plan.

Class 4 claims will be discharged upon confirmation if this Plan is confirmed pursuant to 11 U.S.C. § 1191(a) and upon completion of the Plan if this Plan is confirmed pursuant to 11 U.S.C. § 1191(b).

**4.05 Classification and Treatment of Equity Interests**

| | |
|---|---|
| **Classification:** | Class 5 consists of the equity interests in the Debtor. |
| **Treatment:** | Holders of equity interests in the Debtor shall retain their equity interests in the same manner as prior to the confirmation of the Plan.  Holders of equity interests in the Debtor are unimpaired and not entitled to vote on the Plan. |

## ARTICLE V – ALLOWANCE OF DISALLOWANCE OF CLAIMS
### 5.01. No Distributions With Respect to Disputed Claims

Notwithstanding any other Plan provision, Distributions will be made on account of a Disputed Claim only after, and only to the extent that, the Disputed Claim becomes an Allowed Claim, **provided, however**, that if the only dispute regarding a Disputed Claim is to the amount of the Disputed Claim, the Holder of a Disputed Claim shall be entitled to receive a Distribution on account of that portion of the Disputed Claim, if any, which the Debtor does not dispute, which Distribution shall be made by the Debtor at the same time and in the same manner that such Debtor makes Distribution to Holders of similar Allowed Claims pursuant to the provisions of the Plan.  The Debtor may, in its discretion, withhold Distributions otherwise due and payable by the Debtor hereunder to any applicable Holder of a Claim until the Claims Objection Deadline, to enable a timely objection thereto to be filed. A Claim of any Person from which property may be recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer that may be avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be a Disallowed Claim unless and until the Person or transferee has paid the amount or turned over the property for which such Person or transferee is liable. Any Holder of a Claim that becomes an Allowed Claim after the Effective Date will receive its Distribution in accordance with the terms and provisions of this Plan.

## ARTICLE VI – EXECUTORY CONTRACTS

**6.01    Assumption and Rejection of Executory Contracts and Unexpired Leases:** Except as otherwise provided in the Confirmation Order, this Plan, or any other Plan Document, sixty days after the Effective Date, the Debtor will be deemed to have rejected any and all other Executory Contracts or unexpired leases under Bankruptcy Code section 365, except it shall have assumed those executory contracts listed on **Exhibit E.**  Prior to the deemed rejection, the Debtor may add  executory contracts to **Exhibit E** by notifying the counterparty to the Executory Contract in writing with a proposed cure amount and allowing 14 days to respond.

**6.02    Bar Date for Rejection Damage Claims**    Any Rejection Damage Claims arising from the rejection under the Plan of an executory contract or an unexpired lease must be filed with the Court and served on the Debtor and their counsel within ninety (90) days after the Effective Date.  Any Rejection Damage Claims that are not timely filed and served will be forever barred and unenforceable and the Persons holding these Claims will be barred from receiving any Distributions under the Plan on account of their Rejection Damage Claims. The Debtor reserves the right to object to any such Rejection Damage Claims; provided, however, that any such objections must be served and filed not later than 30 days after such claim is filed.

## ARTICLE VII- PLAN IMPLEMENTATION

**7.01    Revesting of Property:** All property of the Estate shall revest in the Debtor on the Effective Date, free and clear of all other liens, claims, interests and encumbrances, except for the liens specifically preserved or created by this Plan.

**7.02    Biannual Payments:**  On December 1, 2025;  June 1, 2026; December 1, 2026; June 1, 2027; December 1, 2027; June 1, 2028; December 1, 2028;  June 1, 2029; December 1, 2029; and June 1, 2029,, the Debtor, or, if this Plan is confirmed pursuant to 11 U.S.C. § 1191(b), the Trustee (from payments made to the Trustee by the Debtor), shall pay Biannual Payments of $5,000.00 (the "Biannual Payments").  Said Biannual Payments shall first be distributed to holders of Allowed Administrative Claims until such claims are satisfied, and then shall be distributed to holders of General Unsecured Claims, pro rata.  The Biannual Payments shall also include a pro rata portion of the proceeds of any Avoidance Action, net of any attorneys' or other fees and expenses incurred in connection with the pursuit, settlement or collection of such proceeds.  If, during the last two full quarters prior to any Biannual Payment, the Debtor's revenue is less than 85% percent of the projected Expected Revenue as set forth on Exhibit B, then the Debtor may move to modify the amount of that Biannual Payment. If, during the last two full quarters prior to any Biannual Payment, the Debtor's revenue is more than 115% percent of the projected Expected Revenue as set forth on Exhibit B, then the Trustee may move to modify the amount of that Biannual Payment.  To the extent that any Biannual Payment to any creditor is less than $15.00, it may be paid the next time a Biannual Payment is due.

**7.03    Compensation of SubChapter V Trustee:**  If this Plan is confirmed pursuant to 11 U.S.C. § 1191(b), the SubChapter V Trustee shall be entitled to pay herself a $500.00 fee each time a Biannual Payment is made to unsecured creditors to compensate for her time in making such distributions, and shall be entitled to payment of any reasonable attorneys fees she incurs out of the Biannual Payments, upon reasonable notice to the Debtor.  However, if the Debtor and the Trustee consent, the Confirmation Order will provide that the Debtor will make the Biannual Payments without payment to the Trustee.  If the Debtor objects to any of the Trustee's attorneys' fees, the Bankruptcy Court shall have exclusive jurisdiction to resolve any dispute related thereto.

If this Plan is confirmed pursuant to 11 U.S.C. § 1191(a), the SubChapter V Trustee shall be paid any and all Professional Fees on the later of the Effective Date and date of the allowance of such Professional Fees.

**7.04    Remedies:**  In the event the Debtor defaults under this Plan, the Trustee or any Creditor or holder of an Administrative Expense Claim seeking to enforce their rights under this Plan shall provide notice of such default to the Debtor.  If such default is not cured within 28 days of said notice, the party providing notice of such default may seek conversion to Chapter 7 or the appointment of a Subchapter V trustee with expanded powers similar to a Chapter 11 Trustee, who may, in their discretion sell any and all of the Debtor's assets, or may seek relief from any stay or injunction pursuant to § 9.03 of this Plan.  Alternatively, Creditors may move to extend the term of this Plan by one year.

**7.05    Certain Secured Claims treated as Partially Secured:**  The claim of the United States Small Business Administration, shall be treated, pursuant to 11 U.S.C. § 506, as partially secured in the amount of $225,000 and the bifurcated balance shall be placed in Class 4.

**7.06    Transfer Tax:** Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of any notes or securities under the Plan, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including, without limitation, any deeds, deeds of trust, mortgages, bills of sale or assignments executed in

connection with any of the transactions contemplated under the Plan, or shall not be subject to any stamp tax or other similar tax.

**7.07    Undeliverable distributions**: Distributions to Persons holding Allowed Claims will initially be made by mail as follows: 1. Distributions will be sent to the address, if any, set forth on a filed proof of claim as amended by any written notice of address change received by the Debtor; or 2) If no such address is available, Distributions will be sent to the address set forth on the Bankruptcy Schedules. If no address is available either on a proof of claim or on the Bankruptcy Schedules, the Distribution will be deemed to be undeliverable.  If a Distribution is returned to the Debtor as an undeliverable Distribution or is deemed to be an undeliverable Distribution, the Debtor will make no further Distribution to the Person holding the Claim on which the Distribution is being made unless and until the Debtor are timely notified in writing of that Person's current address.  Subject to the following paragraph, until they become deliverable, the Debtor may, in their discretion, create a Plan Reserve for undeliverable Distributions for the benefit of the Persons entitled to the Distributions.  These Persons will not be entitled to any interest on account of the undeliverable Distributions.  Any Person that is otherwise entitled to an undeliverable Distribution and that does not, within the later of six months after the Effective Date, or sixty (60) days after a Distribution is returned to the Debtor as undeliverable, or is deemed to be an undeliverable Distribution, provide the Debtor with a written notice asserting its claim to or interest in that undeliverable Distribution and setting forth a current, deliverable address will be deemed to waive any claim to or interest in that undeliverable Distribution and will be forever barred from receiving that undeliverable Distribution or asserting any Claim related thereto against the Debtor and the Estate.  Nothing in the Plan requires the Debtor to attempt to locate any Person holding an Allowed Claim and whose Distribution is undeliverable.

**7.08    Post-Effective Date Rights and Obligations**: From and after the Effective Date of this Plan, the Debtor shall be free to, in a manner not inconsistent with this Plan or any Order issued by the United States Bankruptcy Court, without further order of the Court (1) pay Post-Effective Date Expenses without restriction, (2) to use, sell or otherwise dispose of their Assets, or (3) obtain unsecured financing or junior financing secured by its Assets; and (4) refinance any secured claim; (5) prepay any claims entitled to payment under this Plan, so long as all claims in any class are prepaid equally; and (6) settle any Claim, Cause of Action or Avoidance Action. The Debtor shall not be required to maintain a Debtor-In-Possession Account after the Effective Date of the Plan.  After the Effective Date of the Plan, the Debtor shall not be required to file Post-Confirmation Quarterly Reports or pay quarterly U.S. Trustee Fees.

**7.09    Preservation of Causes of Action and Defenses:** Unless expressly waived, released or settled in the Plan or any Final Order, the Debtor shall retain, and may exclusively enforce, any and all claims, rights, defenses and Causes of Action including without limitation, claims, rights, defenses and Causes of Action not specifically identified, or which the Debtor may presently be unaware of, or which may arise or exist by reason of additional facts or circumstances unknown to the Debtor, at this time, or facts or circumstances which may change or be different from those which the Debtor believes to exist), whether arising before or after the Petition Date, in any court or tribunal, including but not limited to the Bankruptcy Court.  The Debtor will be authorized to exercise and perform the rights, powers and duties held by the Debtor's Estate, including without limitation the authority under Bankruptcy Code section 1123(b)(3) to provide for the settlement,

17

adjustment, retention and enforcement of claims, rights, defenses and Causes of Action. The Debtor shall further have the power, and may exercise discretion, to institute, prosecute, abandon, settle, or compromise any and all such claims, rights, defenses and Causes of Action, and shall not be required to seek Bankruptcy Court approval of such decisions.

**7.10    Preclusion Doctrines:** No preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise), or laches shall apply to such claims, rights, defenses or Causes of Action upon, or after, the Confirmation or consummation of the Plan based on the Disclosure Statement, the Plan, or the Confirmation Order, except where such claims, rights, defenses or Causes of Action have been specifically released in the Plan or other Final Order.  No preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise), or laches shall prevent the Debtor from objecting to any Claim, except where such Claim is specifically allowed in the Plan or other Final Order.  No one may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any claim, right, defense or Cause of Action against them as an indication that the Debtor will not pursue any and all available claims, rights, defenses, or Causes of Action against them.  The Confirmation Order shall not bar the Debtor by res judicata, collateral estoppel, or otherwise from collecting, prosecuting, settling, or defending any claim, right, defense, or Cause(s) of Action.

**7.11    Retention of Professionals:** On the Effective Date, the Debtor shall be allowed, without further order of the Bankruptcy Court, to employ and compensate professionals, including, but not limited to, counsel, expert witnesses, accountants, appraisers, brokers, consultants, and financial advisors, as needed to assist it in fulfilling its obligations under the Plan, and on whatever fee arrangement it deems appropriate, including, without limitation, hourly fee arrangements and contingency fee arrangements.  Professionals engaged by the Debtor after the Effective Date shall not be required to file applications for compensation in order to receive the compensation provided for herein.  Notwithstanding the foregoing, if the Debtor has any objection to a request for compensation submitted to them by a Professional, the Debtor and/or the Professional which has submitted the application may file a motion with the Bankruptcy Court to decide the matter.

**7.12    Post-Confirmation Management of the Debtor:** After confirmation, Reid Shilling shall remain the president and sole officer of the Debtor.  The Debtor does not anticipate the appointment of new officers, directors, or voting trustees.  Mr. Shilling shall be paid not more (and likely will be paid less) than $7,500.00 per month during the life of this Plan, subject to annual increase of not more than 5%.

## ARTICLE VIII – GENERAL PROVISIONS

**8.01 Definitions and rules of construction:** The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, as supplemented by the definitions listed above.

1.      Except as otherwise provided in the Plan, Bankruptcy Rule 9006(a) applies when computing any time period under the Plan. If any payment or act under the Plan should be required to be made or performed on a day that is not a Business Day, then the payment or act may be completed on the next succeeding day that is a Business Day, in which event the payment or act will be deemed to have been completed on the required day.

2.      A capitalized term that is used in this Plan and that is not defined in this Plan has the meaning attributed to that term, if any, in the Bankruptcy Code or the Bankruptcy Rules.

3.      The definition given to any term or provision in the Plan supersedes and controls any different meaning that may be given to that term or provision in the Bankruptcy Code, the Bankruptcy Rules or the Disclosure Statement.

4.      Whenever it is appropriate from the context, each term, whether stated in the singular or the plural, includes both the singular and the plural.

5.      Any reference to a document or instrument being in a particular form or on particular terms means that the document or instrument will be substantially in that form or on those terms.

6.      Any reference to an existing document means the document as it has been, or may be, amended or supplemented.

7.      Unless otherwise indicated, the phrase "in the Plan," "in this Plan," "under the Plan," "under this Plan," and similar words or phrases refer to this Plan in its entirety rather than to only a portion of the Plan.

8.      Unless otherwise specified, all references to Articles or Exhibits are references to this Plan's Articles or Exhibits.

9.      Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) and except as otherwise provided herein or therein, the laws of (i) the District of Columbia shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan.

10.     All Exhibits are incorporated into and are a part of this Plan as if set forth in full herein.

**8.02. Effective Date:** The effective date (the "Effective Date") of this Plan is the first business day following the date that is 14 days after the entry of the Confirmation Order. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay expires or is otherwise terminated.  For the avoidance of doubt, an appeal, absent entry of a stay pending appeal, will not delay the Effective Date.

**8.03  Severability:** If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**8.04: Binding effect**: The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

**8.05 Captions**: Article captions and headings are used only as convenient references and do not affect this Plan's meaning.

**8.06 Controlling effect:** Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the District of Columbia govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

**8.07 Retention of jurisdiction:**    Under Bankruptcy Code sections 105(a) and 1142, and notwithstanding entry of the Confirmation Order, substantial consummation of this Plan and occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Case, this Plan and the Plan Documents to the fullest extent permitted by law, including, among other things, jurisdiction to:

    **a.** Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim, the resolution of any objections to the allowance or priority of Claims or Interests and the determination of requests for the payment of claims entitled to priority under Bankruptcy Code section 507(a)(2), including compensation of any reimbursement of expenses of parties entitled thereto;

    **b.** Hear and determine all applications for compensation and reimbursement of expenses of the Trustee and Professionals under this Plan or under Bankruptcy Code sections 330, 331, 503(b), 1103, and 1129(a)(4); provided, however, that from and after the Effective Date, the retention and payment of the fees and expenses of the Professionals of the Debtor may be made in the ordinary course of business without the approval of the Bankruptcy Court;

    **c.** Hear and determine all matters with respect to the assumption or rejection of any Executory Contract or unexpired lease with respect to which the Debtor may be liable, and to hear, determine and, if necessary, liquidate any Claims arising therefrom;

    **d.** Effectuate performance of and payments under the provisions of this Plan;

    **e.** Hear and determine any and all adversary proceedings, motions, applications and contested or litigated matters arising out of, under or related to the Case, this Plan, or any Plan Document;

    **f.** Enter such orders as may be necessary or appropriate to execute, implement or consummate the provisions of this Plan and all contracts, instruments, releases and other agreements or documents created in connection with this Plan or the Confirmation Order;

    **g.** Hear and determine disputes arising in connection with the interpretation, implementation, consummation or enforcement of this Plan, including

disputes arising under agreements, documents or instruments executed in connection with this Plan;

**h.** Consider any modifications of this Plan, cure any defect or omission or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

**i.** Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with implementation, consummation, or enforcement of this Plan or the Confirmation Order;

**j.** Enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified or vacated;

**k.** Hear and determine any matters arising in connection with or relating to this Plan, the Confirmation Order, the Plan Documents or any contract, instrument, release or other agreement or document created in connection with this Plan, the Confirmation Order, or any Plan Document;

**l.** Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Case;

**m.** Except as otherwise limited herein, recover all Assets of the Debtor and property of the Estate, wherever located;

**n.** Hear and determine matters concerning state, local and federal taxes in accordance with Bankruptcy Code sections 346, 505 and 1146;

**o.** Hear and determine motions for Bankruptcy Rule 2004 examinations;

**p.** Hear and determine all matters related to the property of the Estate from and after the Confirmation Date;

**q.** Hear and determine any Causes of Action;

**r.** Hear and determine all disputes involving the existence, nature or scope of the injunctions, indemnification, exculpation and releases granted pursuant to this Plan;

**s.** Hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code;

  **t.**  Enforce all orders previously entered by the Bankruptcy Court;

  **u.**  Dismiss the Case; and

  **v.**  Enter a final decree closing the Case.

If the Bankruptcy Court abstains from exercising jurisdiction, or is without jurisdiction, over any matter, this Article will not affect, control, prohibit, or limit the exercise of jurisdiction by any other court that has jurisdiction over that matter.

8.08 **Impaired Classes to Vote:** To the extent the Court determines any Creditor is impaired, each Holder of a Claim in an impaired Class shall be entitled to vote separately to accept or reject the Plan unless such Holder is deemed to reject the Plan.

8.09 **Acceptance by Class of Creditors:** An impaired Class of Claims shall have accepted the Plan if the Plan is accepted by at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have voted to accept or reject the Plan. A Class of Claims shall be deemed to accept the Plan in the event that no Holder of a Claim within that Class submits a Ballot by the Ballot Date.

8.10 **Elimination of Classes:** Any Class that does not contain any Allowed Claims or Interests, or any Claims temporarily allowed for voting purposes under Bankruptcy Rule 3018, as of the date of commencement of the Confirmation Hearing, shall be deemed to have been deleted from the Plan for purposes of (a) voting to accept or reject the Plan and (b) determining whether it has accepted or rejected the Plan under section 1129(a)(8) of the Bankruptcy Code.

8.11 **Cramdown:** In the event that any impaired Class of Claims shall fail to accept the Plan in accordance with section 1129(a) of the Bankruptcy Code, the Debtor reserves the right to request that the Bankruptcy Court confirm the Plan in accordance with section 1191(b) of the Bankruptcy Code or amend the Plan in accordance with section 1129(a) of the Bankruptcy Code.

8.12  **Distribution of Property Under the Plan**

  8.12.1  **Manner of Cash Payments:** Cash payments to domestic entities holding Allowed Claims will be denominated in U.S. dollars and will be made by checks drawn on a domestic bank or by wire transfer from a domestic bank.

  **8.12.2 Setoff and Recoupment:** Notwithstanding anything to the contrary in this Plan, the Debtor may set off, recoup, or withhold against the Distributions to be made on account of any Allowed Claim any claims that the Debtor or the Estate may have against the claimant or the Person holding the Allowed Claim. The Debtor

does not waive or release, and shall not be deemed to waive or release, any claim against those Persons by failing to effect such a setoff or recoupment, by the allowance of any claim against the Debtor or the Estate, or by making a Distribution on account of an Allowed Claim.  In addition, the settlement or adjudication of any Avoidance Action shall not bar the Debtor from filing a subsequent objection to Claim.  The Debtor may assert all of the same rights and defenses, including all setoff rights and rights under Section 502(d) of the Bankruptcy Code, with respect to any Claim held by an Assignee of a Claim as she could against the original Holder of the Claim.

**8.12.3  Interest on Claims:** Unless otherwise specifically provided for in this Plan, the Confirmation Order, any order of this Court, or required by applicable bankruptcy law, Post-Petition interest shall not accrue or be paid on any Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date.

**8.12.4  Withholding and Reporting Requirements** In connection with this Plan and all Distributions under this Plan, the Debtor shall, to the extent applicable, comply with all tax withholding, payment, and reporting requirements imposed by any federal, state, provincial, local, or foreign taxing authority, and all Distributions under this Plan shall be subject to any such withholding, payment, and reporting requirements.   The Debtor shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding, payment and reporting requirements.  All amounts properly withheld from Distributions to a Holder as required by applicable law and paid over to the applicable taxing authority for the account of such Holder shall be treated as part of the Distributions to such Holder.  All Holders shall be required to provide any information necessary to effect information reporting and withholding of such taxes, including but not limited to taxpayer identification numbers. Notwithstanding any other provision of this Plan, each Holder of an Allowed Claim that is to receive a Distribution pursuant to this Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations, on account of such Distribution.  The Debtor may require any Creditor to provide a completed form W-8 or W-9 IRS tax form or otherwise furnish to the Debtor its tax identification number as assigned by the IRS and the Debtor may condition any distribution to any Creditor upon receipt of such tax identification number.

8.13**: Indemnification Obligations**: Except as otherwise provided in this Plan or any contract, instrument, release, or other agreement or document entered into in connection with this Plan, any and all indemnification obligations that the Debtor has pursuant to a contract,

instrument, agreement, certificate of incorporation, by-law, comparable organizational document or any other document, or applicable law, shall be rejected as of the Effective Date, to the extent executory. Nothing in this Plan shall be deemed to release the Debtor's insurers from any claims that might be asserted by counter-parties to contracts or agreements providing the indemnification by and of the Debtor, to the extent of available coverage.

8.14: **No admissions** Notwithstanding anything to the contrary in the Plan, if the Plan is not confirmed, is revoked, or otherwise the Effective Date does not occur, the Plan will be null and void, and nothing contained in the Plan will: (a) be deemed to be an admission by the Debtor with respect to any matter discussed in the Plan, including liability on any Claim or the propriety of any Claim's classification; (b) constitute a waiver, acknowledgement, or release of any Claims, Interests, or any Causes of Action held by the Debtor or the Estate; or (c) prejudice in any manner the rights of the Debtor, the Estate, or any Creditors or Interest Holders in any further proceedings.

## ARTICLE IX – INJUNCTION AND DISCHARGE

**9.01 Pre-Discharge Injunction: Unless otherwise provided herein or the Confirmation Order, all injunctions or stays provided for in the Case pursuant to sections 105, 362 or 525 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, will remain in full force and effect until the Effective Date.**

**As of the Effective Date, all Persons that have held, hold, or may hold Claims (including, but not limited to, Administrative Expense Claims) will be enjoined, from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind on account of any such Claim, Administrative Expense Claim against the Trustee, the Debtor, and their professionals, representatives, successors and assigns (the "Estate Parties"), including, but not limited to, any Claims, Administrative Expense Claims based upon any act or omission, transaction, or other activity of any kind, type or nature that occurred in connection with the Case prior to the Confirmation Date; (ii) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order against the Estate Parties arising from any matter related to the Case; (iii) creating, perfecting, or enforcing any encumbrance of any kind against the Estate Parties or against the property, or interests in property, of the Estate Parties with respect to any such Claims (including, but not limited to, Administrative Expense Claims); and (iv) asserting any defense or right of setoff, subrogation, or recoupment of any kind against any obligation due from the Estate Parties or against the property, or interests in property, of the Estate Parties with respect to any such Claim (including, but not limited to, Administrative Expense Claims) until entry of the Discharge, (as described below), except said injunction against commencing or continuing in any manner any action or other proceeding of any kind on account of any Claim, Administrative Expense Claim as to Estate Parties based on any act or omission, transaction, or other activity of any kind, type or nature that occurred in connection with the Case prior to the Confirmation Date, shall continue after discharge, and as to any Non-Dischargeable Claim, shall continue so long as the Debtor is making payment to the holder of the Non-Dischargeable Claim during the extended period provided by the Plan.**

24

**9.02: Discharge:** If the Debtor's Plan is confirmed under § 1191(a), on the Effective Date, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the fullest extent specified in § 1141(d)(1)(A) of the Code. The Debtor will not be discharged from any debt imposed by this Plan.

If the Debtor's Plan is confirmed under § 1191(b), confirmation of the Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 5 years of this Plan.  As soon as practicable after completion of all payments due within the first 5 years of this Plan, the Court shall discharge the Debtor to the fullest extent specified in § 1141(d)(1)(A) of the Code.  The Debtor will not be discharged from any debt: (i) on which the last payment is due after the day that is 5 years after the Effective Date of the plan; or (ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.  For the avoidance of doubt, all Claims on Exhibit A, including the bifurcated undersecured claim of the SBA will be discharged.

**9.03: Default:** Should the Debtor default under the Plan while the automatic stay or any injunction, including the discharge injunction, under this Plan remains in effect, any affected Creditor or holder of an Administrative Expense Claim shall file a Notice of Default and shall mail a copy of the Notice of Default to the Debtor and serve Debtor's attorney.  The Debtor shall have 28 days to cure the default.  In the event that the default is not cured, the affected Creditor or holder of an Administrative Expense Claim may file a motion for relief from the automatic stay or injunction in order to be entitled to assert all rights available to it under state law against the Debtor or property of the Debtor's estate, or may file a motion to convert the Debtor's case to Chapter 7, ask to expand the powers of the Subchapter V Trustee, or may move to extend the term of the Plan by one year.  The automatic stay and any applicable injunction under this Plan shall remain in effect until the dispute is adjudicated.

Dated: July 21, 2025                   Respectfully submitted

                                       /s/ Justin P. Fasano
                                       Justin P. Fasano (Fed Bar No. MD21201)
                                       McNamee Hosea, P.A.
                                       6404 Ivy Lane, Suite 820
                                       Greenbelt, MD 20770
                                       Tel: 301-441-2420
                                       Fax: 301-982-9450
                                       jfasano@mhlawyers.com
                                       *Counsel for the Debtor*

                                       /s/ Reid Shilling
                                       Shilling Cannery, L.L.C.
                                       by: Reid Shilling, managing member

25

**EXHIBIT A – ALLOWED GENERAL UNSECURED CLAIMS**

| Claimant | Source | Amount |
|---|---|---|
| JPMorgan Chase, N.A. | Claim # 2 | $22,054.26 |
| Alsco Uniforms | Claim # 3 | $2,142.76 |
| U.S. Small Business Administration (EIDL Loan) | Schedule D (bifurcated portion) | $345,000.00 |
| American Express | Schedule F | $1,657.15 |
| Americold | Schedule F | $7,851.11 |
| Conserve the Utility Experts | Schedule F | $9.86 |
| Earth N Eats LLC | Schedule F | $769.00 |
| Ecolab Inc | Schedule F | $488.28 |
| Ecolab Pest Elimination Division | Schedule F | $1,015.34 |
| Industrial Steam Cleaning, Inc. | Schedule F | $2,099.55 |
| Orchard Point Oyster Co. | Schedule F | $656.00 |
| Ovoka Farm | Schedule F | $381.95 |
| Path Valley Farm | Schedule F | $667.00 |
| Roberts Oxygen | Schedule F | $774.76 |
| Shenandoah Seasonal | Schedule F | $380.75 |
| Smart Thinking LLC | Schedule F | $120.00 |
| The Chefs Warehouse | Schedule F | $363.30 |
| The Farm at Doe Run | Schedule F | $217.96 |
| The Great Cheese Corp | Schedule F | $616.85 |
| Top Hat Seafood | Schedule F | $259.80 |
| Washington Gas Light Company | Schedule F | $1,777.98 |
| Wight Tea Company | Schedule F | $184.00 |
| Total | | $389,487.66 |

# EXHIBIT B
# FINANCIAL PROJECTIONS

**In Re Dillons Power Washing LLC, case no. 25-12231**

**Exhibit D - Plan Projections**

| | First Quarter 2026 | Second Quarter 2026 | Third Quarter 2026 | Fourth Quarter 2026 | First Quarter 2027 | Second Quarter 2027 | Third Quarter 2027 | Fourth Quarter 2027 | First Quarter 2028 | Second Quarter 2028 |
|---|---|---|---|---|---|---|---|---|---|---|
| **EXPECTED CASH ON HAND** | $100,000.00 | $74,625.48 | $66,622.29 | $48,924.14 | $18,815.07 | $16,161.59 | $32,416.62 | $32,808.62 | $20,204.39 | $36,859.77 |
| **EXPECTED REVENUE** | $450,000.00 | $485,000.00 | $465,000.00 | $455,000.00 | $486,000.00 | $523,800.00 | $502,200.00 | $491,400.00 | $524,880.00 | $565,704.00 |
| **TIPS/SERVICE FEES** | $108,000.00 | $116,400.00 | $111,600.00 | $109,200.00 | $116,640.00 | $125,712.00 | $120,528.00 | $117,936.00 | $125,971.20 | $135,768.96 |
| | | | | | | | | | | |
| RENT | $60,000.00 | $63,000.00 | $63,000.00 | $63,000.00 | $63,000.00 | $66,500.00 | $66,500.00 | $66,500.00 | $66,500.00 | $69,500.00 |
| PAYROLL | $210,000.00 | $210,000.00 | $210,000.00 | $210,000.00 | $210,000.00 | $210,000.00 | $215,000.00 | $215,000.00 | $215,000.00 | $215,000.00 |
| UTILITIES | $25,000.00 | $25,125.00 | $25,250.63 | $25,376.88 | $25,503.76 | $25,631.28 | $25,759.44 | $25,888.23 | $26,017.68 | $26,147.76 |
| TAXES | $27,000.00 | $29,100.00 | $27,900.00 | $27,300.00 | $29,160.00 | $31,428.00 | $30,132.00 | $29,484.00 | $31,492.80 | $33,942.24 |
| FOOD | $56,250.00 | $60,625.00 | $58,125.00 | $56,875.00 | $60,750.00 | $65,475.00 | $62,775.00 | $61,425.00 | $65,610.00 | $70,713.00 |
| ALCOHOL | $22,500.00 | $24,250.00 | $23,250.00 | $22,750.00 | $24,300.00 | $26,190.00 | $25,110.00 | $24,570.00 | $26,244.00 | $28,285.20 |
| SUPPLIES | $9,000.00 | $9,700.00 | $9,300.00 | $9,100.00 | $9,720.00 | $10,476.00 | $10,044.00 | $9,828.00 | $10,497.60 | $11,314.08 |
| TRUSTEE FEE | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| MARKETING | $6,000.00 | $6,466.67 | $6,200.00 | $6,066.67 | $6,480.00 | $6,984.00 | $6,696.00 | $6,552.00 | $6,998.40 | $7,542.72 |
| REPAIRS AND MAINTENANCE | $1,440.00 | $1,552.00 | $1,488.00 | $1,456.00 | $1,555.20 | $1,676.16 | $1,607.04 | $1,572.48 | $1,679.62 | $1,810.25 |
| GENERAL AND ADMIN | $30,000.00 | $30,000.00 | $30,000.00 | $30,000.00 | $30,000.00 | $30,000.00 | $30,000.00 | $30,000.00 | $30,000.00 | $30,000.00 |
| DIRECT EXPENSE (INCLUDES INSURANCE) | $12,000.00 | $12,000.00 | $12,000.00 | $12,000.00 | $12,000.00 | $12,000.00 | $12,000.00 | $12,000.00 | $12,000.00 | $12,000.00 |
| SBA PAYMENT | $3,126.03 | $3,126.03 | $3,126.03 | $3,126.03 | $3,126.03 | $3,126.03 | $3,126.03 | $3,126.03 | $3,126.03 | $3,126.03 |
| SALES TAX PLAN PAYMENT | $4,756.56 | $4,756.56 | $4,756.56 | $4,756.56 | $4,756.56 | $4,756.56 | $4,756.56 | $4,756.56 | $4,756.56 | $4,756.56 |
| LEASE CURE PAYMENT | $8,301.93 | $8,301.93 | $8,301.93 | $8,301.93 | $8,301.93 | $8,301.93 | $8,301.93 | $8,301.93 | $8,301.93 | $8,301.93 |
| BIANNUAL PAYMENT | $0.00 | $5,000.00 | | | | $5,000.00 | | | | $5,000.00 |
| Total expenses | $475,374.52 | $493,003.19 | $482,698.15 | $485,109.07 | $488,653.49 | $507,544.96 | $501,808.00 | $504,004.24 | $508,224.61 | $527,439.78 |
| CASH ON HAND AT END OF QUARTER | $74,625.48 | $66,622.29 | $48,924.14 | $18,815.07 | $16,161.59 | $32,416.62 | $32,808.62 | $20,204.39 | $36,859.77 | $75,123.99 |

| | Third Quarter 2028 | Fourth Quarter 2028 | First Quarter 2029 | Second Quarter 2029 | Third Quarter 2029 | Fourth Quarter 2029 | First Quarter 2030 | Second Quarter 2030 | Third Quarter 2030 | Fourth Quarter 2030 |
|---|---|---|---|---|---|---|---|---|---|---|
| **EXPECTED CASH ON HAND** | $75,123.99 | $96,263.80 | $103,775.39 | $142,495.11 | $173,700.16 | $191,418.67 | $194,826.56 | $231,547.15 | $268,319.83 | $290,135.03 |
| **EXPECTED REVENUE** | $542,376.00 | $530,712.00 | $566,870.40 | $610,960.32 | $585,766.08 | $573,168.96 | $612,220.03 | $659,837.15 | $632,627.37 | $619,022.48 |
| **TIPS/SERVICE FEES** | $130,170.24 | $127,370.88 | $136,048.90 | $146,630.48 | $140,583.86 | $137,560.55 | $146,932.81 | $158,360.91 | $151,830.57 | $148,565.39 |
| | | | | | | | | | | |
| RENT | $69,500.00 | $69,500.00 | $69,500.00 | $74,000.00 | $74,000.00 | $74,000.00 | $74,000.00 | $78,500.00 | $78,500.00 | $78,500.00 |
| PAYROLL | $220,000.00 | $220,000.00 | $220,000.00 | $250,000.00 | $250,000.00 | $250,000.00 | $250,000.00 | $275,000.00 | $275,000.00 | $275,000.00 |
| UTILITIES | $26,278.50 | $26,409.90 | $26,541.95 | $26,674.66 | $26,808.03 | $26,942.07 | $27,076.78 | $27,212.16 | $27,348.22 | $27,484.96 |
| TAXES | $32,542.56 | $31,842.72 | $34,012.22 | $36,657.62 | $35,145.96 | $34,390.14 | $36,733.20 | $39,590.23 | $37,957.64 | $37,141.35 |
| FOOD | $67,797.00 | $66,339.00 | $70,858.80 | $76,370.04 | $73,220.76 | $71,646.12 | $76,527.50 | $82,479.64 | $79,078.42 | $77,377.81 |
| ALCOHOL | $27,118.80 | $26,535.60 | $28,343.52 | $30,548.02 | $29,288.30 | $28,658.45 | $30,611.00 | $32,991.86 | $31,631.37 | $30,951.12 |
| SUPPLIES | $10,847.52 | $10,614.24 | $11,337.41 | $12,219.21 | $11,715.32 | $11,463.38 | $12,244.40 | $13,196.74 | $12,652.55 | $12,380.45 |
| TRUSTEE FEE | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| MARKETING | $7,231.68 | $7,076.16 | $7,558.27 | $8,146.14 | $7,810.21 | $7,642.25 | $8,162.93 | $8,797.83 | $8,435.03 | $8,253.63 |
| REPAIRS AND MAINTENANCE | $1,735.60 | $1,698.28 | $1,813.99 | $1,955.07 | $1,874.45 | $1,834.14 | $1,959.10 | $2,111.48 | $2,024.41 | $1,980.87 |
| GENERAL AND ADMIN | $30,000.00 | $30,000.00 | $30,000.00 | $30,000.00 | $30,000.00 | $30,000.00 | $30,000.00 | $30,000.00 | $30,000.00 | $30,000.00 |
| DIRECT EXPENSE (INCLUDES INSURANCE) | $12,000.00 | $12,000.00 | $12,000.00 | $12,000.00 | $12,000.00 | $12,000.00 | $12,000.00 | $12,000.00 | $12,000.00 | $12,000.00 |
| SBA PAYMENT | $3,126.03 | $3,126.03 | $3,126.03 | $3,126.03 | $3,126.03 | $3,126.03 | $3,126.03 | $3,126.03 | $3,126.03 | $3,126.03 |
| SALES TAX PLAN PAYMENT | $4,756.56 | $4,756.56 | $4,756.56 | $4,756.56 | $4,756.56 | $4,756.56 | $4,756.56 | $4,756.56 | $4,756.56 | $4,756.56 |
| LEASE CURE PAYMENT | $8,301.93 | $8,301.93 | $8,301.93 | $8,301.93 | $8,301.93 | $8,301.93 | $8,301.93 | $8,301.93 | $8,301.93 | $8,301.93 |
| BIANNUAL PAYMENT | $0.00 | $5,000.00 | | | | $5,000.00 | | | | $5,000.00 |
| Total expenses | $521,236.19 | $523,200.42 | $528,150.68 | $579,755.27 | $568,047.57 | $569,761.07 | $575,499.45 | $623,064.46 | $610,812.16 | $612,254.72 |
| CASH ON HAND AT END OF QUARTER | $96,263.80 | $103,775.39 | $142,495.11 | $173,700.16 | $191,418.67 | $194,826.56 | $231,547.15 | $268,319.83 | $290,135.03 | $296,902.79 |

**EXHIBIT C**
**AMORTIZATION SCHEDULE FOR FC 1331, LLC**

| | Beginning Balance | Interest | Principal | Ending Balance |
|---|---|---|---|---|
| 1 | $148,649.45 | $495.50 | $2,242.11 | $146,407.34 |
| 2 | $146,407.34 | $488.02 | $2,249.58 | $144,157.76 |
| 3 | $144,157.76 | $480.53 | $2,257.08 | $141,900.68 |
| 4 | $141,900.68 | $473.00 | $2,264.60 | $139,636.08 |
| 5 | $139,636.08 | $465.45 | $2,272.15 | $137,363.92 |
| 6 | $137,363.92 | $457.88 | $2,279.73 | $135,084.20 |
| 7 | $135,084.20 | $450.28 | $2,287.33 | $132,796.87 |
| 8 | $132,796.87 | $442.66 | $2,294.95 | $130,501.92 |
| 9 | $130,501.92 | $435.01 | $2,302.60 | $128,199.32 |
| 10 | $128,199.32 | $427.33 | $2,310.27 | $125,889.05 |
| 11 | $125,889.05 | $419.63 | $2,317.98 | $123,571.07 |
| 12 | $123,571.07 | $411.90 | $2,325.70 | $121,245.37 |
| 13 | $121,245.37 | $404.15 | $2,333.45 | $118,911.92 |
| 14 | $118,911.92 | $396.37 | $2,341.23 | $116,570.68 |
| 15 | $116,570.68 | $388.57 | $2,349.04 | $114,221.65 |
| 16 | $114,221.65 | $380.74 | $2,356.87 | $111,864.78 |
| 17 | $111,864.78 | $372.88 | $2,364.72 | $109,500.06 |
| 18 | $109,500.06 | $365.00 | $2,372.61 | $107,127.45 |
| 19 | $107,127.45 | $357.09 | $2,380.51 | $104,746.94 |
| 20 | $104,746.94 | $349.16 | $2,388.45 | $102,358.49 |
| 21 | $102,358.49 | $341.19 | $2,396.41 | $99,962.08 |
| 22 | $99,962.08 | $333.21 | $2,404.40 | $97,557.68 |
| 23 | $97,557.68 | $325.19 | $2,412.41 | $95,145.26 |
| 24 | $95,145.26 | $317.15 | $2,420.45 | $92,724.81 |
| 25 | $92,724.81 | $309.08 | $2,428.52 | $90,296.29 |
| 26 | $90,296.29 | $300.99 | $2,436.62 | $87,859.67 |
| 27 | $87,859.67 | $292.87 | $2,444.74 | $85,414.93 |
| 28 | $85,414.93 | $284.72 | $2,452.89 | $82,962.04 |
| 29 | $82,962.04 | $276.54 | $2,461.07 | $80,500.97 |
| 30 | $80,500.97 | $268.34 | $2,469.27 | $78,031.70 |

| | | | | |
|---|---|---|---|---|
| 31 | $78,031.70 | $260.11 | $2,477.50 | $75,554.20 |
| 32 | $75,554.20 | $251.85 | $2,485.76 | $73,068.44 |
| 33 | $73,068.44 | $243.56 | $2,494.04 | $70,574.40 |
| 34 | $70,574.40 | $235.25 | $2,502.36 | $68,072.04 |
| 35 | $68,072.04 | $226.91 | $2,510.70 | $65,561.34 |
| 36 | $65,561.34 | $218.54 | $2,519.07 | $63,042.27 |
| 37 | $63,042.27 | $210.14 | $2,527.46 | $60,514.81 |
| 38 | $60,514.81 | $201.72 | $2,535.89 | $57,978.92 |
| 39 | $57,978.92 | $193.26 | $2,544.34 | $55,434.58 |
| 40 | $55,434.58 | $184.78 | $2,552.82 | $52,881.75 |
| 41 | $52,881.75 | $176.27 | $2,561.33 | $50,320.42 |
| 42 | $50,320.42 | $167.73 | $2,569.87 | $47,750.55 |
| 43 | $47,750.55 | $159.17 | $2,578.44 | $45,172.11 |
| 44 | $45,172.11 | $150.57 | $2,587.03 | $42,585.08 |
| 45 | $42,585.08 | $141.95 | $2,595.66 | $39,989.42 |
| 46 | $39,989.42 | $133.30 | $2,604.31 | $37,385.12 |
| 47 | $37,385.12 | $124.62 | $2,612.99 | $34,772.13 |
| 48 | $34,772.13 | $115.91 | $2,621.70 | $32,150.43 |
| 49 | $32,150.43 | $107.17 | $2,630.44 | $29,519.99 |
| 50 | $29,519.99 | $98.40 | $2,639.21 | $26,880.78 |
| 51 | $26,880.78 | $89.60 | $2,648.00 | $24,232.78 |
| 52 | $24,232.78 | $80.78 | $2,656.83 | $21,575.95 |
| 53 | $21,575.95 | $71.92 | $2,665.69 | $18,910.27 |
| 54 | $18,910.27 | $63.03 | $2,674.57 | $16,235.69 |
| 55 | $16,235.69 | $54.12 | $2,683.49 | $13,552.21 |
| 56 | $13,552.21 | $45.17 | $2,692.43 | $10,859.77 |
| 57 | $10,859.77 | $36.20 | $2,701.41 | $8,158.37 |
| 58 | $8,158.37 | $27.19 | $2,710.41 | $5,447.96 |
| 59 | $5,447.96 | $18.16 | $2,719.45 | $2,728.51 |
| 60 | $2,728.51 | $9.10 | $2,728.51 | $0.00 |

## EXHIBIT D
## AMORTIZATION SCHEDULE FOR SBA

|  | Beginning Balance | Interest | Principal |  |
|---|---|---|---|---|
| 1 | $225,000.00 | $703.13 | -$338.89 | $224,661.11 |
| 2 | $224,661.11 | $702.07 | -$339.94 | $224,321.17 |
| 3 | $224,321.17 | $701.00 | -$341.01 | $223,980.16 |
| 4 | $223,980.16 | $699.94 | -$342.07 | $223,638.09 |
| 5 | $223,638.09 | $698.87 | -$343.14 | $223,294.95 |
| 6 | $223,294.95 | $697.80 | -$344.21 | $222,950.74 |
| 7 | $222,950.74 | $696.72 | -$345.29 | $222,605.45 |
| 8 | $222,605.45 | $695.64 | -$346.37 | $222,259.08 |
| 9 | $222,259.08 | $694.56 | -$347.45 | $221,911.63 |
| 10 | $221,911.63 | $693.47 | -$348.54 | $221,563.09 |
| 11 | $221,563.09 | $692.38 | -$349.63 | $221,213.47 |
| 12 | $221,213.47 | $691.29 | -$350.72 | $220,862.75 |
| 13 | $220,862.75 | $690.20 | -$351.81 | $220,510.94 |
| 14 | $220,510.94 | $689.10 | -$352.91 | $220,158.02 |
| 15 | $220,158.02 | $687.99 | -$354.02 | $219,804.01 |
| 16 | $219,804.01 | $686.89 | -$355.12 | $219,448.88 |
| 17 | $219,448.88 | $685.78 | -$356.23 | $219,092.65 |
| 18 | $219,092.65 | $684.66 | -$357.35 | $218,735.31 |
| 19 | $218,735.31 | $683.55 | -$358.46 | $218,376.84 |
| 20 | $218,376.84 | $682.43 | -$359.58 | $218,017.26 |
| 21 | $218,017.26 | $681.30 | -$360.71 | $217,656.56 |
| 22 | $217,656.56 | $680.18 | -$361.83 | $217,294.72 |
| 23 | $217,294.72 | $679.05 | -$362.96 | $216,931.76 |
| 24 | $216,931.76 | $677.91 | -$364.10 | $216,567.66 |
| 25 | $216,567.66 | $676.77 | -$365.24 | $216,202.42 |
| 26 | $216,202.42 | $675.63 | -$366.38 | $215,836.05 |
| 27 | $215,836.05 | $674.49 | -$367.52 | $215,468.52 |
| 28 | $215,468.52 | $673.34 | -$368.67 | $215,099.85 |
| 29 | $215,099.85 | $672.19 | -$369.82 | $214,730.03 |

| | | | | |
|---|---|---|---|---|
| 30 | $214,730.03 | $671.03 | -$370.98 | $214,359.05 |
| 31 | $214,359.05 | $669.87 | -$372.14 | $213,986.91 |
| 32 | $213,986.91 | $668.71 | -$373.30 | $213,613.61 |
| 33 | $213,613.61 | $667.54 | -$374.47 | $213,239.14 |
| 34 | $213,239.14 | $666.37 | -$375.64 | $212,863.51 |
| 35 | $212,863.51 | $665.20 | -$376.81 | $212,486.70 |
| 36 | $212,486.70 | $664.02 | -$377.99 | $212,108.71 |
| 37 | $212,108.71 | $662.84 | -$379.17 | $211,729.54 |
| 38 | $211,729.54 | $661.65 | -$380.36 | $211,349.18 |
| 39 | $211,349.18 | $660.47 | -$381.54 | $210,967.64 |
| 40 | $210,967.64 | $659.27 | -$382.74 | $210,584.90 |
| 41 | $210,584.90 | $658.08 | -$383.93 | $210,200.97 |
| 42 | $210,200.97 | $656.88 | -$385.13 | $209,815.84 |
| 43 | $209,815.84 | $655.67 | -$386.34 | $209,429.50 |
| 44 | $209,429.50 | $654.47 | -$387.54 | $209,041.96 |
| 45 | $209,041.96 | $653.26 | -$388.75 | $208,653.20 |
| 46 | $208,653.20 | $652.04 | -$389.97 | $208,263.23 |
| 47 | $208,263.23 | $650.82 | -$391.19 | $207,872.05 |
| 48 | $207,872.05 | $649.60 | -$392.41 | $207,479.64 |
| 49 | $207,479.64 | $648.37 | -$393.64 | $207,086.00 |
| 50 | $207,086.00 | $647.14 | -$394.87 | $206,691.13 |
| 51 | $206,691.13 | $645.91 | -$396.10 | $206,295.03 |
| 52 | $206,295.03 | $644.67 | -$397.34 | $205,897.70 |
| 53 | $205,897.70 | $643.43 | -$398.58 | $205,499.12 |
| 54 | $205,499.12 | $642.18 | -$399.83 | $205,099.29 |
| 55 | $205,099.29 | $640.94 | -$401.07 | $204,698.22 |
| 56 | $204,698.22 | $639.68 | -$402.33 | $204,295.89 |
| 57 | $204,295.89 | $638.42 | -$403.59 | $203,892.30 |
| 58 | $203,892.30 | $637.16 | -$404.85 | $203,487.46 |
| 59 | $203,487.46 | $635.90 | -$406.11 | $203,081.34 |
| 60 | $203,081.34 | $634.63 | -$407.38 | $202,673.96 |

**EXHIBIT E - EXECUTORY CONTRACTS TO BE ASSUMED**

| Contract | Cure amount |
|---|---|
| FC 1331, LLC – Lease for Real Property | Assumed and cured per treatment in Class 2 |
| Ecolab, Inc – Dishwasher Lease | Assumed, no cure payment required |